IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

JOSHUA SHOOP,

                    Plaintiff,                    Case No. 3:19-cv-00145-JWS

          vs.
                                                  **ORDER RE DOCKET NO. 14**
ANDREW SAUL,
Commissioner of Social Security,

                    Defendant.

# I.   INTRODUCTION

On December 10, 2017, Claimant Joshua Shoop ("Claimant") filed an application for Disability Insurance Benefits ("disability benefits") under Title II of the Social Security Act ("the Act") alleging disability beginning January 17, 2017. Claimant exhausted his administrative remedies and seeks relief from this court. He argues the determination by the Social Security Administration ("the Agency") that she is not disabled within the meaning of the Act is not supported by substantial evidence and is the product of reversible error based on its failure to take account of disabling mental impairments. Claimant seeks a reversal of the decision by the Agency and a remand for further proceedings.

The Commissioner of the SSA ("Commissioner") filed an answer to the complaint at docket 10 and an answering brief at docket 15. Claimant did not file a reply brief. Oral argument was not requested and was not necessary to the court's decision.

## II. STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[1] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] Such evidence must be "more than a mere scintilla," but also "less than a preponderance."[3] In reviewing the agency's determination, a court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.[4] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[5] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which he did not rely."[6] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination . . . or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[7] Finally, the ALJ has a "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"[8] This duty exists for both a represented claimant and an unrepresented claimant, although the ALJ must be especially diligent in developing all the facts when the claimant is unrepresented.[9]

---

[1] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[2] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[3] *Matney,* 981 F.2d at 1019.

[4] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[5] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

[6] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[7] *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

[8] *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)); *see also Garcia v. Comm'r of Soc. Sec*., 768 F.3d 925, 930 (9th Cir. 2014).

[9] *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

# III.   DETERMINING DISABILITY

The Act provides for the payment of disability benefits to individuals who have contributed to the social security program and who suffer from a physical or mental disability.[10] Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[11]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[12]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[13]

**Step 1.**  Determine whether the claimant is involved in substantial gainful activity.

**Step 2.**  Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.

---

[10] 42 U.S.C. § 423(a).

[11] 42 U.S.C. § 423(d)(1)(A).

[12]  42 U.S.C. § 423(d)(2)(A).

[13]  20 C.F.R. § 404.1520(a)(4).

**Step 3.**  Determine whether the impairment or combination of impairments meets or equals the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1 so as to preclude substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed. Once determined, the RFC is used at both step four and step five. A RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from his impairments, including impairments that are not severe.[14]

**Step 4.**  Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.  Otherwise, the evaluation process moves to the fifth and final step.

**Step 5.**  Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.

A claimant bears the burden of proof at steps one through four in order to make a *prima facie* showing of disability.[15]  If a claimant establishes a *prima facie* case, the burden of proof then shifts to the agency at step five.[16] The Commissioner can meet this burden in two ways: "(1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[17]

---

[14] 20 C.F.R. § 404.1545(a).

[15] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[16] *Treichler*, 775 F.3d at 1096 n.1.

[17] *Tackett*, 180 F.3d. at 1099.

## IV.  PROCEDURAL AND FACTUAL BACKGROUND

Claimant was born December 27, 1984; he is currently 35 years old.  He alleges that he is disabled due to issues with his lungs and chest, migraines, anxiety, depression, executive function disorder, and GERD.[18] Based on the ALJ's decision, he also appears to have, at some point during the administrative proceedings, alleged a disability related to peroneal nerve paralysis.[19] He reported working as meter reader, retail manager, customer service technician and representative, and a loan processor and officer prior to his alleged disability onset date, which was January 17, 2017.[20] On December 10, 2017, Claimant filed his application for disability benefits. On April 5, 2018, the Agency determined that Claimant was not disabled under the applicable rules.[21] On June 3, 2018, Claimant timely requested a hearing before an ALJ.[22] On February 12, 2019, he appeared and testified with legal representation at a hearing before ALJ Cecilia LaCara.[23] On March 26, 2019, the ALJ issued an unfavorable ruling from January 17, 2017, through the date of the decision.[24] On May 7, 2019, the Appeals Council denied Claimant's request for review.[25]

### A.  ALJ Decision

Applying the familiar five-step process, the ALJ concluded as follows:

**Step 1**: Claimant had not engaged in substantial gainful activity since January 17, 2017, his alleged onset date.

**Step 2**: Claimant suffered from the following severe impairments: status post pulmonary embolism; tachycardia; right carpel tunnel syndrome; migraine headaches; restrictive lung disease, and obesity. The Claimant's GERD and mental impairments were

---

[18] A.R. 104.

[19] A.R. 16.

[20] A.R. 100-01; 26.

[21] A.R. 104-08.

[22] A.R. 109.

[23] A.R. 33-85.

[24] A.R. 13-27.

[25] A.R. 1-6.

found to be non-severe. Claimant's allegation of peroneal nerve paralysis was deemed not medically determinable.

**Step 3**: Claimant's severe impairments did not meet any medical listings.

**RFC**: In evaluating Claimant's RFC, the ALJ concluded as follows:

The [Claimant] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) standing for up to 3 hours in an 8-hour workday, walking for up to 2 hours in an 8-hour workday, and sitting for up to 6 hours in an 8-hour workday with normal breaks; frequent bilateral pushing and pulling; occasional climbing of ramps or stairs; occasional stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolding; frequent balancing; frequent bilateral overhead reaching; frequent right gross and fine manipulation; avoidance of moderate exposure to irritants such as fumes, odors, dust, gases, poorly ventilated areas; and avoidance of all exposure to unprotected heights and hazardous machinery.[26]

The ALJ found that "the record considered as a whole" demonstrates that the Claimant's impairments cause some limitations in his ability to work, but that the limitations can be accommodated by the restrictions set forth in her residual functional capacity assessment.[27] In concluding that Claimant could perform light work with restrictions, in addition to considering Claimant's severe medical impairments, the ALJ considered the Claimant's alleged inability to work due to mental impairments. The ALJ noted that despite his complaints of disability due to depression, anxiety, and cognitive function, these mental impairments were no more than mild and that "his mental status examinations have consistently shown evidence of intact recent and remote memory, an appropriate fund of knowledge, and the ability to provide a reliable and accurate history."[28] Therefore, the Claimant's mental impairments were not significant enough to affect his RFC.

---

[26] A.R. 20.

[27] A.R. 26.

[28] A.R. 16; 18; 25.

**Step 4**: The ALJ found that given the Claimant's RFC, he was capable of performing past relevant work as a customer service representative, loan processor, and loan officer.

**Step 5:** Because the ALJ determined that Claimant was capable of performing past relevant work, she did not proceed to Step 5.

## B. Issues on Appeal

Claimant argues that the ALJ's decision is not supported by substantial evidence and that the ALJ committed legal errors. He does not dispute the ALJ's findings regarding his physical impairments; he only challenges her analysis and evaluation of his mental impairments. He argues that the ALJ erred in evaluating the severity of his mental impairments at step two and therefore did not adequately account for such impairments when assessing his RFC. Specifically, Claimant argues that the ALJ improperly evaluated the medical evidence supporting his mental impairments and improperly discounted the medical source opinion of Claimant's psychiatrist Kurt Guindon, M.D., while relying on the opinion of the Agency's testifying psychological expert, Colette Valette, Ph.D.

## IV. DISCUSSION

### A. Consideration of supporting medical records

#### 1. Legal Standards

An ALJ is required to consider all the relevant evidence presented yet is under no obligation to articulate in the decision how she considered all factors for all medical opinions and medical findings in the record.[29]  Therefore, an ALJ's failure to cite to a specific piece of evidence does not prove that such evidence was ignored. An ALJ, however, must explain why "significant probative evidence" has been rejected.[30]

#### 2. Discussion

Claimant's argument that the ALJ failed to sufficiently consider his military and Department of Veterans Affairs ("VA") records that document his mental impairments is

---

[29] 20 C.F.R. § 404.1520c(b)(1); *see also Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (stating that an ALJ "need not discuss all evidence presented").

[30] *Vincent*, 739 F.2d at 1395 (quotation marks and citations omitted).

without merit. The ALJ devoted nearly four pages of her decision to discuss the medical evidence supporting her conclusion that Claimant's mental impairments were non-severe.[31] The evidence the ALJ cited includes Claimant's VA records, the very evidence Claimant contends she did not consider. Indeed, Claimant later acknowledges in his brief that the evidence was not completely ignored but rather was only considered "on a selective basis."[32] The ALJ was under no obligation to discuss every relevant record. Rather, she was required to explain why any significant probative evidence was rejected. A review of the ALJ's decision demonstrates that she considered medical records that indicated more severe mental impairments, but then explained why she believed those records were outweighed by evidence that was inconsistent or showed improvement.[33]

In addition to Claimant's general argument that the ALJ inadequately considered his VA records in their entirety, Claimant specifically mentions two pieces of probative evidence he believes the ALJ improperly rejected. The first piece of evidence he believes was wrongly discounted is his 100% disability rating from the VA. The ALJ however did not err in her rejection of Claimant's VA disability rating. Findings from other governmental agencies, such as the VA, are "inherently neither valuable nor persuasive" to the issue of whether a claimant is disabled for the purposes of social security benefits.[34] The regulations applicable to Claimant's application, as one filed after March 27, 2017, state that a decision by another governmental agency about whether a claimant is disabled

---

[31] A.R. 16-19.

[32] Doc. 14 at p. 22.

[33] *See, e.g.,* A.R. 16 ("He did report worsening depression and anxiety on February 8, 2017 but by February 17, 2017, he again reported no depression or anxiety and he had an appropriate mood and affect on exam."); A.R. 17 ("Despite earlier complaints of cognitive deficits, by May 3, 2018, the claimant's recent and remote memory was grossly [intact], his fund of knowledge was adequate, and he provided a detailed and reliable history."); A.R. 17 ("On January 3, 2019, the claimant's psychiatrist indicated the claimant had word finding difficulty, was tangential, and his memory was impaired. . . . However, the undersigned notes that the claimant did not have such a limitation at the hearing. Further, the undersigned notes there was no formalized testing to show that the claimant had the deficits in neurocognitive functioning alleged.").

[34] 20 C.F.R. § 404.1520b(c)(1).

is based on that agency's rules and not social security rules and therefore is not binding.[35] As noted by the ALJ in her opinion, she did not need to provide analysis as to the VA's decision or give it any weight; she only needed to consider the underlying evidence and conduct her own assessment of that evidence, which she did.[36]

The second piece of evidence Claimant believes the ALJ did not adequately consider is his treatment by VA psychiatrist Gary Bawtinhimer, M.D. He specifically refers to Dr. Bawtinhimer's recommendation on July 10, 2017, that Claimant use a service dog to manage depression and anxiety symptoms.[37] Given the ALJ's citation to some of Dr. Bawtinhimer's treatment records, it appears that she did in fact review that evidence but presumably concluded it did not support a finding of severe impairment.[38] By Claimant's own recitation of his VA medical history, Dr. Bawtinhimer's notes regularly indicate that Claimant had adequate mental functioning. His notes use language such as "essentially normal" "low-grade anxiety/frustration" and "partial remission" to describe Claimant's mental status.[39] Indeed, during the same visit wherein Dr. Bawtinhimer recommended a service dog, the doctor found Claimant to be in a stable mood with minimal anxiety and noted that his "thought processing" and judgment were sound.[40] A couple months later, Dr. Bawtinhimer continued to note that Claimant's "[a]nxiety level seems low and adequately managed" and that his "[j]udgment remains good" with his "[h]igher cortical function intact."[41] Therefore, Dr. Bawtinhimer's treatment notes are not probative of severe mental impairments stemming from

---

[35] 20 C.F.R. § 404.1504.

36 20 C.F.R. § 404.1504; 20 C.F.R. § 404.1520b; A.R. 25.

[37] A.R. 681.

[38] *See, e.g.*, A.R. 16 (citing Exhibit 9F at p. 117).

[39] Doc. 14 at pp. 11-15.

[40] A.R. 680.

[41] A.R. 675.

Claimant's anxiety and depression. Instead, they reasonably lend support to the ALJ's determination that Claimant's mental impairments were mild at most.

## A. Weighing of Medical Opinions

### 1. Legal Standards

For applications filed on or after March 27, 2017, like Claimant's, a new set of regulations apply that fundamentally change the framework for how an ALJ must weigh medical opinion evidence. Under the new regulations, the definition of what constitutes a medical opinion has narrowed, focusing more on what the medical source believes the claimant can do despite his impairments and what work-related limitations are present.[42] The regulations define a medical opinion as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.[43]

As to the consideration and weighing of medical opinions, the new regulations have shifted the focus away from the source of the opinion, removing the term "treating source" from the applicable definitions and eliminating the requirement that the ALJ give controlling evidentiary weight to such a source.[44] The emphasis is now on the content of

---

[42] *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1513(a)(2).

[43] 20 C.F.R. § 404.1513(a)(2).

[44] *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. §§ 404.1520c, 404.1513.

the opinion and the supporting evidence.[45] That is, the ALJ no longer needs to give any particular weight to a medical opinion based on its source. Instead, the ALJ must look at the persuasiveness of the medical opinion using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length, extent, and type of treatment; (4) specialization; and (5) other relevant factors that support or contradict the medical opinion.[46] The regulations state that the two most important factors are supportability and consistency.[47] Supportability means the extent to which the medical opinion is supported by relevant, objective evidence and explanations.[48] Consistency means the extent to which the opinion is consistent with the evidence from other medical and nonmedical sources.[49] These are the only two factors that must be addressed in the ALJ's decision, unless the ALJ must weigh two equally persuasive but differing medical opinions in which case all five factors should be addressed.[50]

## 2. Discussion

In reaching her conclusion that Claimant's mental impairments were non-severe, the ALJ relied on Dr. Colette Valette's opinion. She indicated that Dr. Valette's opinion "was the most recent medical expert to review and consider the claimant's file" and that her medical opinion was based on a "cumulative review and synthesis of the medical evidence."[51] The ALJ assessed whether Dr. Valette's opinion was supported by and consistent with objective medical evidence, concluding, with citation to the record, that the majority of Claimant's examinations and medical visits surrounding the period in

---

[45] *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. at 62574 (proposed Sept. 9, 2016).

[46] 20 C.F.R. § 404.1520c(c).

[47] 20 C.F.R. § 404.1520c(a), (b)(2).

[48] 20 C.F.R. § 404.1520c(c)(1).

[49] 20 C.F.R. § 404.1520c(c)(2).

[50] 20 C.F.R. § 404.1520c(b)(2)-(3).

[51] A.R. 16.

question showed that his mental functioning, mood, concentration, judgment and self-management were essentially normal and unremarkable.[52] She acknowledged treatment notes that indicated more serious mental issues, but then concluded that those instances were intermittent and followed up by noted improvements.[53]

Claimant argues that Dr. Valette admittedly did not review the records from a neuropsychological evaluation he underwent in 2012.[54] Those records indicate that Claimant suffered from depression, anxiety, and personality issues and that cognitive rehab and counseling were warranted.[55] Dr. Valette's failure to consider these 2012 records when forming her opinion does not make her opinion unsupported or inconsistent as a matter of law. As noted by the Agency in its briefing, medical opinions that predate the relevant period are of limited relevance.[56] The 2012 evaluation predated the January 2017 onset date by five years, making it of little relevance to the issue of whether Claimant had severe mental impairments during the period in question.

In reaching her conclusion about Claimant's mental impairments, the ALJ also rejected the medical opinion offered by Claimant's psychiatrist, Dr. Kurt Guindon. Dr. Guindon completed a mental residual functional capacity assessment that described Claimant's functional limitations. He indicated that Claimant had seriously limited functioning or no functioning in areas such as remembering detailed instructions, carrying out simple instructions, maintaining concentration, and maintaining a schedule.[57] The ALJ found his opinion unpersuasive "as it is against the medical evidence of record, his own treatment notes, and the testimony of Dr. Valette."[58] Referencing her previous

---

[52] A.R. 16-18.

[53] A.R. 16-18.

[54] A.R. 43.

[55] A.R. 2045-54.

[56] *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008)

[57] A.R. 1121-24.

[58] A.R. 19.

discussion of Claimant's treatment history, she concluded that "the vast majority of the treatment showed normal cognitive, social, concentration, persistence, and adaptive functioning."[59] Her opinion discusses a treatment note dated about one month prior to the hearing wherein Dr. Guindon noted Claimant had difficulty finding correct wording and showed memory impairment, but her opinion rejects that record as unpersuasive based on the fact that Claimant did not have such cognitive limitations during the hearing.[60] She noted there was no formalized testing to support an opinion that Claimant had such cognitive deficits.[61] She also noted that there was no history of psychiatric hospital admission, emergency visits, or treatment to justify the extreme impairments listed on Dr. Guindon's assessment form.[62] Another basis for her rejection of Dr. Guindon's opinion was that he "did not seriously consider the claimant's true functioning" given that there were two identical assessments in the record with only the date changed.[63]

Claimant specifically challenges the ALJ's rejection of Dr. Guindon's opinion based upon the presence of two identical assessments in the record. He argues that he explained why there were two identical assessments in the record—the doctor had initially filled out the form with the wrong year written on it and thereafter resubmitted the form with the correct year—but that the ALJ ignored this explanation and then used the error to reject the assessment.[64] While it appears the ALJ disregarded Claimant's explanation for the duplicate assessment, the court cannot find reversible error given she provided other supported reasons for discounting Dr. Guindon's opinion.

Claimant also argues that the ALJ erred in rejecting Dr. Guindon's opinion because she failed to consider other factors lending credence to his opinion, such as the

---

[59] A.R. 19.

[60] A.R. 17-18.

[61] A.R. 17-18.

[62] A.R. 19.

[63] A.R. 19.

[64] Doc.14 at p. 24.

length and extent of his relationship with Claimant. As noted above, however, the applicable regulations provide that the ALJ need only explain how she considered supportability and consistency. That was done here.

**A. RFC Assessment**

The ALJ ultimately determined that Claimant was capable of light work and, based on testimony from a vocational expert, concluded that Claimant could perform past relevant work as a customer service representative, loan processor, and loan officer.  Claimant argues that his disabling mental impairments were not considered as part of this assessment. As noted above, however, the ALJ's determination that his mental impairments were non-severe is reasonably supported by evidence in the record. While an ALJ is required to consider even the non-severe impairments in a RFC analysis, she did so here, providing an assessment of the degree of Claimant's mental limitations.[65] The ALJ's opinion not only deemed Claimant's impairments non-severe, but found that his mental functioning was normal with, at most, mild limitations in some areas of functioning.

## V.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Claimant's motion for a reversal of the Agency's denial and a remand for further proceedings at Docket 14 is **DENIED.  The Clerk will please enter judgment for defendant.**

DATED  this 2nd day of February 2020.


/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[65] A.R. 19.